THIBODEAUX, Chief Judge, dissenting.
hThe State is responsible for proving each element of a crime beyond a reasonable doubt. In order to modify the verdict on appeal, the appellate court must look at the evidence in a light most favorable to the state, but still find that the evidence proves each element of the lesser included responsive offense beyond a reasonable doubt. See State v. Byrd, 885 So.2d 248 (La.1980); State v. Hills, 498 So.2d 240 (La.App. 1 Cir.1986), writ denied, 503 So.2d 13 (La.1987).
The only evidence presented by the State in the current case was in regards to the watermelon truck incident. B.P., the victim, alleged that Defendant either made or told her to lie down in the truck, after which she alleged Defendant proceeded to have sex with her. Contrary to the majority’s characterization of B.P.’s testimony, it is unclear as to what occurred. The ma *658 jority conveniently omits the entire testimony, and only references the first part. First, she testifies, “while I was in the truck, he made me lay down, and then he had sex with me.” B.P., while clarifying her answer for the examining attorney, next testifies as follows:
Q. Okay. So, this third time, when he came to this truck, he said, lay down, we’re getting ready to have sex?
A. No, he didn’t say he was getting ready to have sex.
kQ. But you just said you had sex with him, right?
A. I said he had sex with me, yes. He' said, lay down.
Q. And you just laid on down?
A. I just laid down.
Q. You didn’t question—
A. I didn’t know — I didn’t know it was going to happen.
The victim does not testify that any force was used or threats of physical violence were made. Furthermore, she does not testify that she believed resistance would be useless. In the cases relied upon by the majority, the State presented evidence that either some physical harm came to the victim, some amount of force was used such as “grabbing her face” and “push[ing] her onto her back,” or the victim testified that she believed resistance was useless or that she could not resist because “when she get frightened, she freezes.” State v. Schexnaider, 03-144 (La.App. 3 Cir. 6/4/03), 852 So.2d 450. In this case, there is no such testimony. Further, a reasonable trier of fact could find that the victim’s testimony of Defendant “pushing” her panties to the side was just a way of clarifying and describing the event for counsel. The victim testified:
Q. Okay. So you’re laying down and what? He took your panties off?
A. He picked up my dress, just pushed my panties over to the side. He didn’t pull it down. He didn’t take my clothes off.
In State v. Wilkinson, 00-339 (La.App. 5 Cir. 10/18/00), 772 So.2d 758, writ denied, 00-3161 (La.10/12/01), 799 So.2d 494, the victim was forcibly grabbed and thrown to the ground. That conduct is absent here.
These statements describing the truck incident do not support a finding of forcible rape beyond a reasonable doubt. Although it is true that actual resistance is not required, the evidence must support the belief that the victim did |3not resist because she reasonably believed her resistance to be useless. . No evidence was presented to demonstrate whether or not the victim believed that. Although the examining attorney continued to rephrase the victim’s testimony and include that she was “hysterical” following the incident, the victim never said she was hysterical and actually testified that when she ran inside to her mom, she did not know if she was crying. She told her mother she needed to talk to her and her mother dismissed her until after bath time. The victim did not testify that she was scared, hysterical, or frightened. It is the majority’s erroneous inclusion of the word “hysterical” when that testimony is nonexistent.
The victim also never conveyed to anyone that Defendant was using force, threatening bodily harm, or that she believed resistance would be useless. The victim’s cousin, Pamela Davis, testified that she discussed the victim and Defendant’s relationship with the victim after the watermelon truck incident. Ms. Daws testified:
Q. And what did you tell her?
A. I asked her what — what was going on. I asked her why.
Q. What did she tell you?
*659 A. She said that’s just something that they did.
[[Image here]]
Q. Something that they did. Did you go any further than that—
A. No.
Q. — to tell her to explain what “they did” meant
A. No. I asked her: Why were you doing that? She said: It’s what he wanted to do.
Without the State presenting any evidence to show force, threats of force, that the victim was prevented from resisting by force of threats of force, or |4that the victim reasonably believed her resistance would be futile, it cannot be determined that the State has carried its burden of proving every element of forcible rape beyond a reasonable doubt. Even viewing the evidence in a light most favorable to the state, there was no evidence presented to support a finding of the above elements under such a heavy burden as “beyond a reasonable doubt.”
For the foregoing reasons, I dissent.