503 So.2d 511 (1986)
STATE of Louisiana
v.
Derek A. BROADNAX and Cyrilla M. Young.
No. KA 4054.
Court of Appeal of Louisiana, Fourth Circuit.
November 14, 1986.
Rehearing Denied March 19, 1987.
Writ Denied May 15, 1987.
*512 William J. Guste, Jr., Atty. Gen., Barbara Rutledge, Asst. Atty. Gen., Harry F. Connick, Dist. Atty., A. Hammond Scott, Pamela *513 S. Moran, Asst. Dist. Attys., New Orleans, for plaintiff-appellee.
Harold Douglas, New Orleans, for appellant Derek A. Broadnax.
John Wilson Reed, Lori R. Fregolle, Glass & Reed, New Orleans, for defendant-appellant Cyrillia M. Young.
Before SCHOTT, KLEES and BYRNES, JJ.
SCHOTT, Judge.
After defendants were jointly charged by bill of information with possession with intent to distribute pentazocine in violation of LSA-R.S. 40:967 and possession of a firearm as convicted felons, in violation of R.S. 14:95.1, the charges were severed and the pentazocine charge was brought to trial. Defendant, Cyrillia Young, was convicted of possession, and defendant, Derek Broadnax, was convicted of possession with intent to distribute.
Young was sentenced to five years and a $4,958.00 fine, and Broadnax was sentenced to ten years and a $5,000.00 fine. They were both adjudged habitual offenders under R.S. 15:529.1, their sentences were vacated, and they were resentenced, Young to five years, and Broadnax, twenty years.
After obtaining a search warrant for 2212 Ursulines Avenue in New Orleans and being confronted with an iron door and a heavy wooden door at the entrance to the premises, the police obtained a wrecker and pretended to tow away an automobile from the front of the premises so as to entice the occupants to open the doors. Broadnax came out first, then Young, who was standing just outside the wooden door when the police moved to execute the warrant. As Officer Melder ran past Young she pulled the wooden door closed, it was locked, and they entered by force with Melder kicking it open. Inside the officers seized about $5,000.00 from a safe in the front room and 199 sets of Talwin and Pyribenzamine from a dresser drawer in the bedroom. They also seized a few pieces of jewelry, some marijuana, scales, two hand guns, and some ammunition.

BROADNAX ASSIGNMENT OF ERROR NO. 1:
C.Cr.P. art. 705 requires the district attorney to file separate bills of information when the court has ordered a severance. By this assignment Broadnax contends he was prejudiced because when the offenses were severed a new bill on the drug offense was not produced. Defendant has made no suggestion in the trial court or in this court as to how he was prejudiced by the state's failure to comply with C.Cr.P. art. 705. In the absence of such a showing the state's conduct is considered harmless error. State v. Sermon, 404 So.2d 261 (La.1981).

BROADNAX ASSIGNMENT OF ERROR NO. 2
By this assignment defendant attacks the trial court's denial of his motion to suppress on the ground that the search warrant was not based on probable cause. The affidavit which led to the issuance of the search warrant disclosed these facts: A confidential and reliable informant whose information in the past led to arrest of drug dealers told police he had just purchased two "sets" from one Cyrillia at 2212 Ursulines where she was living with her new boy friend, Jerry, and that wholesale amounts of sets were available there. Officer Austin, who on two previous occasions had obtained and executed search warrants at these premises and both times arrested one Cyrillia Valmore, organized a surveillance of the premises. Within an hour they observed three different individuals go to the front door. One of them went inside for a few minutes, came out, and sped away in an automobile. The other two were seen passing objects inside and, in turn, receiving objects which they placed in their clothes. One of these two was looking about constantly as if to see whether he was being observed.
In State v. Olsen, 446 So.2d 439 (La.App. 4th Cir.1984), writ denied 450 So.2d 963 (La.1984), the court summarized the principles and authorities governing review of a magistrate's decision to issue a search warrant. The affidavit here meets all the tests *514 discussed therein. The totality of circumstances presented to the issuing magistrate established a fair probability that criminal evidence would be found at the premises to be searched. These circumstances include the information from the informant whose reliability was known to the police from prior experience, in combination with the activities observed by the police which were consistent with drug dealing. This assignment is meritless.

BROADNAX ASSIGNMENT OF ERROR NO. 3:
The record does not disclose that Broadnax filed a written motion for a severance of his trial. Young did, and Broadnax indicated to the trial judge his agreement with Young's motion. He also made an oral motion to sever immediately before trial on grounds of antagonistic defenses, which was denied. In this court, Broadnax argues the severance should have been granted pursuant to C.Cr.P. art. 704 because his defense and Young's were antagnostic with the result that justice could not be obtained from a joint trial.
Whether "justice requires a severance" under C.Cr.P. art. 704(2) must be determined by the facts of each case. State v. Turner, 365 So.2d 1352 (La.1978). The trial judge is vested with discretion in acting upon a motion for a severance the exercise of which will not be disturbed in the absence of an abuse thereof. State v. Prudholm, 446 So.2d 729 (La.1984). In that case, the court held that while a severance should be granted where the defenses are truly antagonistic, a mere unsupported allegation that defenses will be antagonistic is not sufficient to require a severance.
As Prudholm states, an antagonistic defense occurs when a co-defendant attempts to place the blame on the defendant seeking the severance, causing the latter to defend himself against the co-defendant in addition to the state. Broadnax has failed to show this. He claims he was deprived of the opportunity of accusing Young, but he does not show that he was forced to defend himself against accusations by her. Thus, his argument that he was entitled to a severance because of antagonistic defenses has no merit.

BROADNAX ASSIGNMENT OF ERROR NO. 4:
By this assignment Broadnax asserts he was deprived of his constitutional right to cross-examine one of the police officers. This stems from the trial court's ruling that questions to the officer regarding the contents of the affidavit supporting the application for the search warrant were improper. Broadnax argues that the entire focus of the affidavit both as to the confidential informant's report to the officer and the officer's own knowledge was on Young and had he been permitted to bring this out he could have shown his own "non-involvement." Several officers participated in the search. Officer Dorian testified that he seized the 199 sets from the top dresser drawer in the bedroom of 2212 Ursulines; and that he saw male clothing, and "male trappings", "some after shave, colgne and what not, things like that" in the bedroom. Officer Austin also testified he seized a number of receipts addressed to Broadnax at 2212 Ursulines and at 3116 Dumaine and an automobile title in the name of Derek Broadnax at 3116 Dumaine. In light of this evidence we are convinced that the restriction on his cross examination, if erroneous at all, constituted harmless error. Receipts in the name of Broadnax found at the address carried the implication that he resided at the house. The facts that these receipts were found in the bedroom along with his automobile title and male clothing and cosmetics tend to show his occupancy of this room where the dresser containing the drugs was located and therefore support the conclusion that he had dominion and control over the drugs. Under these circumstances there is no likelihood that the restriction of Broadnax's cross examination contributed in any way to his conviction.

BROADNAX ASSIGNMENT OF ERROR NO. 7:
Broadnax contends the state failed to establish an unbroken chain of evidence between the officer who seized the pentazocine *515 and the criminalist who tested it. The testimony of the officer who identified the 199 sets introduced in evidence as the ones he seized was sufficient to meet the test that more probably than not these were the ones seized. State v. Vaughn, 431 So.2d 763 (La.1983).
Because of the conclusion we reach below concerning errors patent we need not consider Broadnax's remaining assignments which concern his sentence.

YOUNG'S ASSIGNMENT OF ERROR NO. 1:
Young asserts that the evidence was insufficient as a matter of law to convict her of possession of the pentazocine. She argues that no rational trier of fact could have found beyond a reasonable doubt that she exercised dominion or control over the substance and that every reasonable hypothesis of her innocence was not excluded.
A person not in physical possession of a substance may have constructive possession when it is under the person's dominion and control. Also a person may be in joint possession of a drug when it is in the possession of a companion and the person willfully and knowingly shares with the companion the right of control over it. Guilty knowledge is an essential element of the crime of unlawful possession of an illegal drug. State v. Trahan, 425 So.2d 1222 (La.1983).
Officer Austin testified that a quantity of both men's and women's jewelry were taken from both the persons of defendants and the bedroom, but that a necklace with a silver pendant engraved or marked "Cyrillie", a second necklace with a gold pendant marked "Lady C", a gold bracelet, another chain with silver pendant, a gold pendant marked "C", a gold pendant with Sadie, a gold pendant marked "Derek", a gold number "1", a jade and gold pendant, a group of rings, and a gold bracelet were found in the bedroom.
The most serious question presented in this case is whether the circumstantial evidence is sufficient to exclude every reasonable hypothesis of Young's innocence of constructive possession of the drugs. The critical question is whether, under the evidence, Young may be deemed to have been in joint possession of the drugs which were in the possession of her companion, Broadnax; or whether she willfully and knowingly shared with him the right to control the drugs. State v. Smith, 245 So.2d 327 (La. 1971).
In State v. Cann, 319 So.2d 396 (La.1975) the court, after reviewing a number of cases in order to determine what facts will support a finding of constructive possession, concluded that each case must stand or fall on its own merits. Applying this rule to the instant case we find that the state proved these facts: 1) Young was present in the apartment with Broadnax; 2) a number of items of women's jewelry including some with her monogram and one with her first name were found in his bedroom where the drugs were found. From these facts a rational fact finder could infer that the jewelry was hers and she was on the premises for more than a casual visit. An additional fact proved by the state was her behavior when she found out the police were going to search the house. At this time both she and Broadnax were outside the house, and, when she realized the police were coming in, she pulled the door shut preventing them from entering. From this circumstance it was reasonable for the fact finder to infer that she knew the drugs were there and had some share in the dominion over and control of them.
The fact that Young slammed the door on the police while she was outside the house distinguishes this case from State v. Harvey, 463 So.2d 706 (La.App. 4th Cir. 1985) which she says is on "all fours" with the instant case. Young's conduct provides the inference not only that she knew the drugs were inside but also that they were under her dominion and control, to the extent that she didn't want the police to find them. It is not reasonable to infer that she knew the drugs were in Broadnax's dresser, but she had no connection with them whatsoever, and yet, while she and Broadnax were both outside the house she slammed the door to prevent a number of policemen from searching Broadnax's residence *516 and finding his drugs. Viewing the evidence in the light most favorable to the prosecution we have concluded that the jury, as a rational fact finder, could have been convinced beyond a reasonable doubt that Young possessed the drugs and that every reasonable hypothesis of her innocence was excluded.
A second error assigned by Young arose from the trial court's ruling that she could not cross examine the officers as to statements they made in the affidavit leading to the search warrant which statements Young contends were false. Young argues that had she been able to elicit these false statements in the affidavit she could have impeached the officers testimony and shown they were biased. The trial judge took the position that she had already passed on the credibility of the officers when she ruled on Young's motion to suppress, but this would not prevent the defendant from using the same evidence to discredit the officers in the eyes of the jury.
We are satisfied that the discrepancies Young wanted to point out were inconsequential and if the judge committed error in preventing the questions the error was harmless. It would not have led the jury to think the search wasn't made, or the items weren't found as testified to by the officers, or that Young didn't act the way she did when the officers appeared. In short there is no reasonable possibility that the exclusion of this evidence contributed to the conviction, State v. Martin, 458 So.2d 454 (La.1984); and we reach this conclusion beyond a reasonable doubt, State v. Vessell, 450 So.2d 938 (La.1984).
In our review of the record for errors patent we found that the orders of appeal had already been entered as to both defendants when they were found to be habitual offenders and sentenced as such pursuant to R.S. 15:529.1. Since the trial court no longer had jurisdiction to impose the enhanced sentences they are set aside and the original sentence are reinstated. In the event they are resentenced as habitual offenders their rights to appeal their enhanced sentences are reserved to them.
Accordingly, the convictions are affirmed, the enhanced sentences are vacated, and the original sentences are reinstated.
CONVICTIONS AFFIRMED, ENHANCED SENTENCES VACATED, ORIGINAL SENTENCES REINSTATED.
PER CURIAM.
In her application for rehearing appellant, Cyrillia Young, argues that the basis for this Court's affirmance of her conviction is erroneous in two respects: 1) appellant contends that this court misstated the amount of jewelry found in the bedroom as is revealed in the record; and 2) appellant argues that this court placed undue emphasis on the slamming of the door by appellant in light of the fact that defense counsel was not permitted to cross-examine the police officers at trial on statements made in the search warrant.
On consideration of the first argument, the record reveals that the following pieces of jewelry were identified by Officer Austin as having been found in the bedroom at 2212 Ursulines: three gold rope chains, an unidentified object, a gold pendant with a "C", a gold pendant marked Sadie, a gold pendant marked Derek, a group of rings and a gold bracelet. The other items of jewelry seized were not specifically identified as coming from a particular location; however, Officer Austin testified that the majority were found in the bedroom and a few select items were seized from defendants' persons. In our original opinion the court erroneously stated that a necklace with a silver pendant marked "Cyrillie", a second necklace with a gold pendant marked "Lady C", and a gold bracelet were also found in the bedroom. Although the record is silent as to the location of these three items, there were several other pieces of jewelry which were clearly identified as coming from the bedroom, including a pendant marked "C". As it is reasonable to infer that the jewelry was hers, this evidence supports the finding that Young had constructive possession over the drugs.
*517 In our original opinion, we also concluded that Young's slamming the door behind her when the police officers attempted entry also contributed to the inference that she had knowledge of the presence of the drugs. Appellant argues in her application for rehearing for the second time that she should have been allowed to cross-examine the police officers on the application for the search warrant in an attempt to show bias and discredit the officers' testimony. Appellant does not raise any new issues by this argument that were not dealt with on original hearing. We are not persuaded that the trial judge's refusal to allow testimony as to the search warrant application was improper, and even if it was, it was harmless as it could not have contributed to Young's conviction.
Accordingly, the application for rehearing is denied.